Clyde WILLIAMS, Jr. & David Lee Smith, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 66708, 66709.

Court of Criminal Appeals of Texas, En Banc.

Dec. 21, 1983.

Rehearing Denied Jan. 25, 1984.

Izak Gregory, Dallas, for Williams.

Bill Roberts, Dallas, for Smith.

Henry Wade, Dist. Atty. and Ronald D. Hinds and William M. Fry, Jr., Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

Appellants, Clyde Williams, Jr., and David Lee Smith, were jointly tried and convicted for the aggravated robbery of a Pizza Inn cashier. The jury assessed punishment for Williams at fifty-five years and Smith at forty years. In a single ground of error, appellants attack their convictions based on admission of an extraneous "offense" transaction involving appellant Williams.

At trial, Albert Bradford and Adolphus Jackson testified that on December 28, 1978, they were at a car wash located behind the Pizza Inn. A car pulled into an open bay, six men got out and walked around. Two of the men, appellant Williams and a "large heavy-set man" walked to the side of the Pizza Inn and conferred while the car drove off with the others. Williams entered the store, followed in five minutes by the large heavy-set man. Moments later, the same car returned, driven by appellant Smith, who pulled in behind the Pizza Inn, picked up the heavy-set man when he emerged from the store, and sped away. When police arrived, witness Bradford went to the Pizza Inn, identified Williams, who had remained behind, and gave a

description of the car driven by Smith. Bradford identified appellant Smith as the driver of the car, having known him for some years as an acquaintance. Both witnesses' testimony coincided, and they identified the appellants in open court.

The State's only witness to the actual robbery was Cynthia Arnold, cashier and waitress at the Pizza Inn. She testified that Williams entered the store, walked around, went to the restroom area, returned, and walked around again before ordering a small pizza, giving the name "James." When asked by the State's attorney if she had ever seen Williams in the Pizza Inn prior to the day of the robbery, Arnold allowed that she had, approximately one year before. She stated that on that prior occasion Williams entered the store, went to the restroom area, returned, walked around, ordered a small pizza, gave the name "James," and at gunpoint robbed her. Arnold testified that during the instant robbery she remembered Williams and the similarity in the chain of events and warned or attempted to warn the assistant manager. She then turned toward the counter to find the large, heavy-set man with a shotgun, pointing at the assistant manager. Directed toward the cash register, Arnold removed about $200 and handed it over to the heavy-set man, who then fled. Apparently Williams stayed seated near the counter while these events occurred.

Appellants contend the trial court erred in admitting Arnold's testimony about the extraneous offense for several reasons: none of the eyewitness testimony was undermined on cross-examination; no defensive theory could be refuted as none was offered; and, since appellant Williams was arrested at the scene of the offense, the State did not need the extraneous offense to show common scheme, motive, intent, or identity. The gist of their argument is that the evidence offered does not fit neatly into one of the "exceptions" to the general rule prohibiting admission of extraneous offenses listed in *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972). In *Albrecht,* we stated:

"Evidence of extraneous offenses committed by the accused *has been held* admissible: (1) To show the context in which the criminal act occurred . . . . (2) To circumstantially prove identity where the state lacks direct evidence on this issue. (3) To prove scienter, where intent or guilty knowledge is an essential element of the state's case and cannot be inferred from the act itself. (4) To prove malice or state of mind, . . . (5) To show the accused's motive, . . . (6) To refute a defensive theory raised by the accused." (Emphasis added). 486 S.W.2d at 101.

Much confusion has been engendered by reading this statement in *Albrecht* as an exhaustive list of exceptions to nonadmissible extraneous offenses, *and* as the test of their admissibility. It is neither. It is what it purports to be, a list of examples, and to that extent a good one.

■ The general rule is that an accused may not be tried for some collateral crime or for being a criminal generally. See *Rubio v. State,* 607 S.W.2d 498, 499 (Tex.Cr.App.1980); *Christiansen v. State,* 575 S.W.2d 42, 45 (Tex.Cr.App.1979); *Hines v. State,* 571 S.W.2d 322, 325 (Tex.Cr.App.1978); *Cameron v. State,* 530 S.W.2d 841, 843 (Tex.Cr.App.1976). The reasons for generally prohibiting the admission of extraneous offense transactions are well reported:

"... In a criminal proceeding, when the State seeks admission of an extraneous or similar transaction committed by the accused which constitutes a separate criminal offense, introduction of that 'extraneous offense' transaction is inherently prejudicial, since the accused has no notice he will be called to defend against it, and his 'propensity to commit crimes' is not material to whether he is guilty of the specified conduct which is charged by the State. . . ." *Elkins v. State,* 647 S.W.2d 663, 665 (Tex.Cr.App.1983).

See also, *Bates v. State,* 643 S.W.2d 939, 944 (Tex.Cr.App.1982); *Rubio v. State,* supra, at 506, and cases cited therein.

■ Equally well recognized, however, is that

" '[T]hese evidentiary principles, as most, must in some circumstances give way. For extraneous transactions constituting offenses shown to have been committed by the accused (note omitted) may become admissible upon a showing by the prosecution both that the transaction is *relevant* to a *material* issue in the case; and, the relevancy value of the evidence outweighs its inflammatory or prejudicial potential.' " *Elkins v. State,* supra, at 665, quoting *Rubio v. State,* supra, at 506, (concurring opinion) (underlining in original opinion).

See, *Murphy v. State,* 587 S.W.2d 718, 722 (Tex.Cr.App.1979). This is the true "test" of extraneous offense evidence admissibility.

■ Within this analysis, the inquiry as to whether, at what time, and for what purpose an extraneous offense is admissible differs for cases established by direct and circumstantial evidence. *Compare Elkins v. State,* supra, *and Redd v. State,* 522 S.W.2d 890, 892 (Tex.Cr.App.1975), *with Mulchahey v. State,* 574 S.W.2d 112, 117 (Tex.Cr.App. 1978), *and Etchieson v. State,* 574 S.W.2d 753, 760 (Tex.Cr.App.1978).

" '. . . [I]n a case established by direct evidence the court must consider whether the material issue to which the extraneous conduct is relevant is <u>contested</u>, and if so, . . . determine whether its admission would be of <u>assistance to the jury</u> in resolving the contested issue before it.' " (Underlining in original opinion) *Elkins v. State,* supra, at 665, quoting from *Rubio v. State,* supra (concurring opinion).

In a circumstantial evidence case, admissibility as part of the State's direct evidence depends on the transaction's relevance to a material issue which the State must prove. See *Mulchahey v. State,* supra; *Etchieson v. State,* supra; *Jones v. State,* 568 S.W.2d 847, 858 (Tex.Cr.App.1978).

■ The State's case against appellant Williams for aggravated robbery was one of circumstantial evidence. Nothing in the record indicates that the large heavy-set man, the gunman, was ever captured. Al-

though the witnesses outside the Pizza Inn, Bradford and Jackson, testified that Williams arrived in the same car as the heavyset man and Smith, that Williams conferred with the gunman, and that Smith drove the getaway car, only Arnold's testimony concerned the actual robbery. The State maintains the admission of the extraneous offense involving the prior robbery of Arnold by Williams in the same store was justified to show the "identity of Williams as an actual party to the robbery." This phraseology is confusing as strictly speaking the "identity" of Williams was clear, but the import of the argument is that the extraneous robbery was necessary circumstantial evidence tending to show that Williams was acting as a party to the offense and not simply a customer waiting for a pizza under the assumed name "James." Under the particular facts of this case, wherein Williams remained at the scene of the crime, it was incumbent upon the State to prove that he was a party to the offense. The law of parties was submitted to the jury and provides:

"(a) A person is criminally responsible for an offense committed by the conduct of another if:

" * * *

"(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; . . ."

V.T.C.A., Penal Code, Section 7.02(a)(2).

We find that Arnold's testimony concerning Williams prior act of robbing her, and the details of that robbery, was circumstantial evidence making it more probable than not that Williams was a party to the instant offense and, as such, it was relevant.

■ Did the probative value of the evidence outweigh its potential prejudicial effect? This is a close question, particularly since the record does not contain the conversation at the bench between the court, defense and prosecuting attorneys concerning admission of the evidence. We do know, however, that the trial judge admitted the evidence, and that the relatively short inquiry focused on Arnold's recollection of Williams' uniquely similar actions on the present and prior occasion. Due to Arnold's certainty as to the circumstances of the prior robbery and the present offense, both of which involved her as cashier, we find the evidence more probative than prejudicial. The ground of error is overruled.

Appellant Williams filed a brief with the court, pro se. Although he has no right to hybrid representation, we have examined the grounds addressed and determined they lack merit.

The convictions are affirmed.

CLINTON, Judge, concurring.

I am in accord with the majority's analytical process and resulting conclusion that the extraneous transaction involving appellant Williams was admissible under the novel facts comprising this very close issue. Being aware of the tendency of both lawyers and judges to apply the law concerning the admission of extraneous conduct evidence in a rote fashion, however, my motive in writing is to caution against future misapplication of this case.

There are two crucial factual features presented which, in my view, render the evidence admissible.

First, there is evidence placing Williams in the company of the robbers before the offense and evidence of conduct on the part of Williams (albeit ambiguous) which indicates his knowing assistance in the offense.[1] This evidence created a material issue in the case as to whether Williams acted as a party. Obviously, without some independent indication that he was acting in concert with the robbers, the extraneous offense would have no relevance to any material issue in the case.

1. Having arrived with the robber and the "wheel man," Williams entered the Pizza Inn five minutes before the "large heavy set man" then ordered a pizza, giving a false name. Shortly thereafter, the heavy set man pulled a shotgun on the manager.

Second, the remarkable similarity of the instant transaction to the extraneous offense is what ultimately, though barely, tips the balance in favor of the latter's admission: the same modus operandi, giving the same false name to the same cashier in the same Pizza Inn when taken together render evidence of the extraneous offense slightly more probative on the issue of Williams' participation in the primary offense, than prejudicial.[2] Had the transactions been less similar, I would be inclined to view the probative value of the extraneous offense evidence as negligible, at best.

With emphasis on the above aspects of the case which Judge McCormick has already explicated well, I join in both the opinion and judgment of the Court.

TEAGUE, J., joins.

---

**2.** This balance is basically a question of whether *the evidence has greater potential for assist-ing* the jury in resolving a material issue or for confusing the jury and diverting their attention from the material issue. *Rubio v. State,* 607 S.W.2d 498 (Tex.Cr.App.1980) (Opinion con-

curring). Of course, the fact that the State was constrained to prove appellant's participation by inferences from circumstances is another crucial feature of the evidence which rendered the contested testimony more probative than prejudicial.