**Wendy Jo ESCORT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–85–080–CR.**

Court of Appeals of Texas,
Corpus Christi.

June 26, 1986.

John Hagler, Dallas, for appellant.

Henry Wade, Dallas, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

OPINION

NYE, Chief Justice.

This is an appeal from a conviction of the offense of murder. Appellant's guilt and punishment were determined by a jury. Punishment, enhanced by two prior felony convictions, was assessed at life imprisonment. On appeal, the sufficiency of the evidence is not challenged; however, appellant brings three grounds of error com-

plaining of 1) the admission of evidence of an extraneous offense, 2) the prosecutor's indirect comment on her failure to testify, and 3) a violation of the Speedy Trial Act. We reverse the conviction and remand the case to the trial court.

Appellant was convicted of killing Nathaniel Rusley, her former common-law husband or boyfriend, by stabbing him with a knife. The incident occurred at approximately four o'clock in the afternoon on April 16, 1984. Appellant and a passenger arrived at an apartment complex situated next to the house where the deceased lived. Appellant got out of the car, and the deceased walked up to her and the two began to talk. A heated argument ensued, and appellant shoved the deceased, who then pushed appellant up against the car and struck her on the shoulder with a pair of handcuffs (the number of times he struck her and where were disputed). The deceased told the passenger in the car appellant had been driving to get her out of there and take her anywhere she wanted to go. He then turned and walked away.

According to the State's four eyewitnesses, appellant reached into the car on the driver's side and pulled out a rusty butcher knife. She approached the victim, who was still walking away from her, unaware of her approach. One of the onlooking witnesses yelled to the victim to "watch out." As the victim turned around toward appellant, he tripped and fell backwards over a couch in the yard. As he fell, appellant jumped or fell on top of him.

None of the witnesses saw appellant's knife enter the victim's body because their view was blocked by either a van or the couch. Three witnesses were watching from their second-floor apartment porches, and another was standing outside the victim's house. One witness testified she saw the knife in appellant's hand making stabbing motions.

After the stabbing, appellant fled on foot. The victim got up and tried to chase her, but collapsed shortly thereafter. The murder weapon was found in the street a block away from the scene of the crime.

The knife was found to have human blood on it. The medical examiner testified that the victim died of two stab wounds to the chest.

At trial, appellant put forth evidence of self-defense. Several defense witnesses testified to instances when the victim had been abusive and violent toward the appellant (e.g., beating her and chasing her with a gun). Another defense witness testified that the deceased had beaten and sexually assaulted her and that she had pressed charges, but the deceased had not gone to jail for the offense. She testified that she saw him shortly after the offense occurred, and that he was in the company of appellant, who appeared to be bruised at the time.

Rufus Butler, the passenger in the car appellant drove, testified that appellant told him that she stabbed the victim in self-defense. He also stated that he saw appellant again after the accident and that her face and chest appeared bruised from her encounter with the deceased.

In rebuttal, the State put on evidence of several prior incidents when appellant had cut the victim on the hand and back. The victim's mother testified that appellant had made violent threats toward the victim to her on several occasions. She also stated that she was aware that appellant had previously stabbed her son. One of the police officers who arrested appellant three days after the killing testified that appellant did not have bruises on her face and chest at that time. An acquaintance of appellant testified that, prior to this incident, appellant had threatened to "whoop" the victim.

All of this evidence, from both sides, was held admissible under TEX. PENAL CODE ANN. § 19.06 (Vernon 1974). The prosecution then proffered evidence of another extraneous offense committed by appellant involving a third party (her ex-husband). The admissibility of this extraneous offense was debated several times outside the presence of the jury. Initially, the trial court ruled this evidence inadmissible under Section 19.06 because it involved appellant's relationship with a third party and

not the deceased. Subsequently, however, the trial court ruled the evidence was admissible based upon the case of *Lolmaugh v. State*, 514 S.W.2d 758 (Tex.Crim.App. 1974), cited by the State.

*Lolmaugh* involved a defendant convicted of killing his wife's lover. The defendant urged self-defense as a justification for the shooting. The State introduced a portion of the defendant's written confession in which he admitted shooting another one of his wife's lovers. The Court of Criminal Appeals held that the defendant, by making self-defense an issue, also made motive an issue in the case. It further held that evidence that defendant shot another of his wife's lovers tended to prove his motive in the primary case, because it tended "to show his state of mind toward a class, lovers of his wife, and this state of mind or motive was such that he would shoot members of that class." 514 S.W.2d at 759. The Court stated that this evidence rebutted the theory of self-defense because it tended to show the defendant killed the victim for being his wife's lover and not out of self-defense.

Based on this authority, the State was allowed to introduce the following evidence:

Q [By Mr. Hines, Prosecutor]: Now, do you recall previous to this offense ... did you have conversations with Wendy Jo Escort regarding a former husband of hers?

A [By Ms. Thomas, Witness]: Yes, I did.

Q All right. Did she tell you at that time that she had been to the penitentiary before because she had gotten into a fight with her ex-husband and killed him?

A No, she did not.

Q What did she tell you about that?

A She just said that she had gotten into some trouble once before and that her ex-husband had been killed. She didn't say anything about the penitentiary.

Q Now, do you remember talking to Mr. Cox, the gentleman behind me, yesterday a little while before you testified?

\* \* \* \* \* \*

Q And you talked to him about what you were going to testify to?

A Yes.

Q Did you tell him at that time, relevant to the conversation I have asked you about, that Wendy Escort told you about going to the penitentiary because she had gotten into a fight with her ex-husband and killed him?

[MR. LAMB, Defense Counsel]: Object, your Honor, counsel is going to extraneous offenses. Also, involves her saying assumed facts not in evidence.

THE COURT: I'll overrule.

Q [By Mr. Hines] Did you tell him that?

A No, I did not.

Q Okay. With regard to this ex-husband, did she say it was Nathaniel Rusley or some other person?

A There was no names called. As a matter of fact, there was no details explained or anything. That's all that was said about it. That's all I know about it.

Next, the State was allowed to introduce the testimony of Investigator Cox (with the Dallas County District Attorney's Office) to impeach Grace Thomas. He testified as follows:

Q And did she [Grace Thomas] relate to you a conversation that the defendant had with her where the ... defendant told her about going to the penitentiary before because she, the defendant, had gotten into a fight with her ex-husband and killed him?

MR. LAMB: Object, your Honor, on the grounds this brings up extraneous offenses.

THE COURT: I'll overrule that, Mr. Lamb.

A Yes, she did.

Q [By Mr. Hines] Is that the exact wording that she used to you?

A I asked her if she knew anything about Wendy's background, and she said that Wendy had talked to her about go-

ing to the pen. I said, "Well, what did she say about it?" She said, "Well, she told me she got in a fight with her ex-husband and killed him."

It is the admission of this evidence, going to the extraneous offense, which appellant, in her first ground of error, argues amounted to reversible error. Appellant contends that the testimony regarding this extraneous offense was not admissible because it was not material or relevant to a contested issue in the case. According to appellant, the trial court's reliance on *Lolmaugh* was misplaced because the testimony in this case failed to show the motive for the offense. Additionally, no class was shown in this case, nor were any similarities shown between the two offenses.

There can be no question that, if this evidence of an extraneous offense was inadmissible, harmful error resulted. For one on trial for killing her common-law husband or boyfriend, any evidence that she had also killed her former husband would be highly prejudicial. It is obvious from the record that the prosecution exploited this evidence to its fullest. The prosecution referred to the extraneous offense twice during jury argument. In his argument to the jury at the guilt/innocence phase, the prosecutor stated, "[W]e already know that she has already killed one ex-husband." Again in his argument during the punishment stage, he stated, "... you know the end result was she had a previous fight with an ex-husband and killed him, too."

■ The general rule regarding the admissibility of extraneous offenses is that an accused may not be tried for a collateral crime or for being a criminal generally. *Williams v. State,* 662 S.W.2d 344, 346 (Tex.Crim.App.1983); *Elkins v. State,* 647 S.W.2d 663, 665 (Tex.Crim.App.1983); *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex. Crim.App.1972). Introduction of an extraneous offense is inherently prejudicial, and a defendant's "propensity to commit crimes" is not material to whether the defendant committed the specific offense charged. *Williams,* 662 S.W.2d at 346; *Elkins,* 647 S.W.2d at 665.

■ There are exceptions to this general rule. An extraneous offense committed by the accused may be admissible "upon a showing by the prosecution both that the [extraneous offense] is *relevant* to a *material* issue in the case; and, the relevancy value of the evidence outweighs its inflammatory or prejudicial potential." (Emphasis in original.) *Williams,* 662 S.W.2d at 346. Such evidence has been recognized to be admissible to show the motive of the accused or to refute a defensive theory. *Albrecht,* 486 S.W.2d at 100–101. Even if an extraneous offense is offered to show motive or to refute a defensive theory, its relevance and materiality must still be shown to outweigh its prejudicial effect. *See Williams,* 662 S.W.2d at 346. A relationship must be shown between the extraneous offense "and the evidence necessary to prove the accused committed the crime for which [she] stands charged...." *Albrecht,* 486 S.W.2d at 100.

The analysis of the admissibility of an extraneous offense also differs depending on whether the issue arises in a direct evidence case or a circumstantial evidence case. The Court of Criminal Appeals has stated that the determination of the admissibility of an extraneous offense in a direct evidence case centers on "whether the material issue to which the extraneous conduct is relevant is contested, and, if so, [the inquiry is] whether its admission would be of *assistance to the jury* in resolving the contested issue before it." (Emphasis in original; footnotes omitted.) *Williams,* 662 S.W.2d at 346. In a circumstantial evidence case, the admissibility of an extraneous offense as a part of the State's case-in-chief depends upon its relevance to a material issue the State must prove. The instant case is undoubtedly a direct evidence case. Four eyewitnesses saw the events immediately leading up to the crime, and one saw the knife in appellant's hand making stabbing motions toward the deceased. We also have no doubt the issue of self-defense was raised by appellant.

After careful consideration of all the facts in this case, we cannot say the relevance of the extraneous offense testimony outweighed the inherent prejudicial and inflammatory effect of this testimony. The prosecution put on overwhelming evidence of appellant's guilt. It put on ample evidence to refute appellant's defensive theory. The extraneous offense evidence was simply "overkill," and it went too far. Considering all the other evidence regarding the prior violent episodes of both the appellant and the deceased, evidence regarding appellant's unrelated violent act toward a third party could not have been that helpful to the jury in resolving the contested issue of self-defense.

In the words of Grace Thomas, "there was no details explained" regarding the statement appellant made to her. We agree with appellant that the trial court's reliance on the *Lolmaugh* case is misplaced. It is true that, in both *Lolmaugh* and the case at bar, the accused put forth the theory of self-defense, thereby putting the motive for the primary offense in issue. The distinction between the two cases is that, in *Lolmaugh,* the motive for the primary offense and the collateral offense were the same, infidelity; while, in this case, no motive for the extraneous offense was ever shown. In fact, the exact motive in the primary case was never clearly shown in this case. In *Lolmaugh,* the court held that the extraneous offense showed that the defendant had a tendency to shoot members of a certain class, his wife's lovers. Here, husbands and boyfriends of appellant are a distinct class of people, yet we do not really know the motive or reasoning for any propensity of appellant for killing these class members.

The fact that appellant killed her ex-husband, assuming she did, provides no insight into her tendency to kill this deceased. The issue in this case was who was the aggressor. There was a wealth of evidence in the record regarding the facts and circumstances surrounding the relationship of the victim and appellant upon which the jury could resolve the issue. Was appellant the aggressor in the incident involving her ex-husband, if there was one? Were there any similarities between the offenses? Based on the evidence, we cannot answer these questions, and we feel sure this jury could not either.

The State argues in its brief that its questioning of Grace Thomas regarding the extraneous offense was a proper attempt to lay a predicate to impeach this witness, who, by testifying, put her own veracity at issue. It argues further that the prosecution then properly attempted to prove a prior inconsistent statement made by this witness through the testimony of Investigator Cox. It would be nonsensical for us to hold that the prosecution may introduce inadmissible matters under the guise of impeaching a defense witness. Grace Thomas did not say that appellant killed her ex-husband, Investigator Cox did. In his jury argument, the prosecutor did not use this "impeachment" testimony, regarding appellant killing her ex-husband, to impugn the credibility of Grace Thomas; instead, he used that testimony to argue the truth of the matter asserted in it.

It seems to us the more direct evidence that exists involving the accused and the deceased which rebuts the theory of self-defense and goes to prove motive, the less relevant is evidence involving a collateral offense between the accused and a third party. There was enough direct rebuttal evidence in this case to obviate the relevance of the extraneous offense. It was error for the trial to admit the extraneous offense testimony of Grace Thomas and Investigator Cox.

The trial court did submit a limiting instruction regarding the extraneous offense testimony in its charge to the jury. However, we do not consider the instruction to have any curative value. The instruction stated that the jury could not consider extraneous offense evidence

unless you find and believe beyond a reasonable doubt that the defendant committed such offenses, if any were committed, and even then you may only consider the same in determining motive,

intent, scheme or design, of the defendant, if any was in fact shown, in connection with the offense, if any, alleged against her in the indictment and for no other purpose.

The trial court's instruction that the extraneous offense be considered only in determining motive was of no value in obviating the inflammatory effect of the inadmissible evidence.

Although the evidence of appellant's guilt was overwhelming, the punishment she received was the maximum allowable in this instance. Considering the punishment assessed and the inherently prejudicial nature of the inadmissible evidence, we hold the admission of this evidence was reversible error. Appellant's first ground of error is sustained.

In her second ground of error, appellant complains that the prosecutor, during his jury argument at the guilt/innocence stage of the trial, made an impermissible comment on her failure to testify. Appellant did not testify at either stage of the trial. The portion of the argument about which appellant complains is included here in context:

> [Prosecutor]: But then even despite that woman's [the victim's mother's] forgiving spirit, did this person over here send a letter, a telegram, a phone call, flowers, even apologize to this woman, ever say one word to the only true friend she had in that family, the deceased's mother, for killing him after the killing? I submit to you—
>
> MR. LAMB [Defense Attorney]: Objection, your Honor, counsel commenting on the failure of the defendant to testify.
>
> THE COURT: Overrule that, Mr. Lamb.
>
> MR. HINES: *You're seeing the same lack of remorse in court today that has been in her heart ever since this whole episode with Nathaniel Rusley [the victim] began.*
>
> MR. LAMB: Objection, your Honor, counsel commenting on failure of defendant to testify, lack of remorse.
>
> THE COURT: I believe I'll sustain that.

> MR. LAMB: I'll ask the jury be instructed to disregard that last comment.
>
> THE COURT: Disregard that last comment.
>
> MR. LAMB: Move for mistrial, your Honor.
>
> THE COURT: Deny that. [Emphasis added.]

■ It is a violation of both our state and federal constitutions for a prosecutor to comment on an accused's failure to testify. *Jones v. State*, 693 S.W.2d 406, 407 (Tex.Crim.App.1985); *Garrett v. State*, 632 S.W.2d 350, 351 (Tex.Crim.App.1982). In addition, TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1978) expressly prohibits a prosecutor from alluding to or commenting on an accused's exercise of his or her right not to testify. *Owen v. State*, 656 S.W.2d 458, 459 (Tex.Crim.App.1983).

In evaluating a prosecutor's argument to determine if it was a comment on the accused's failure to testify, the language used must be viewed from the standpoint of the jury. *Jones*, 693 S.W.2d at 407. The implication of the language used must be plain. It is not enough that it might be construed as an indirect reference to the accused's silence. *Banks v. State*, 643 S.W.2d 129, 134 (Tex.Crim.App.1982); *Todd v. State*, 598 S.W.2d 286, 294 (Tex.Crim. App.1980).

■ The test to be employed is whether the language used was manifestly intended or was of such a nature that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Jones*, 693 S.W.2d at 407; *Owen*, 656 S.W.2d at 459; *Banks* 643 S.W.2d at 134. This test must be applied to the particular facts and circumstances of each case. *Jones*, 693 S.W.2d at 407; *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex.Crim.App. 1984). If the argument complained of called the jury's attention to the absence of evidence which the appellant alone could have supplied, error is shown. *Owen*, 656 S.W.2d at 459; *Myers v. State*, 573 S.W.2d 19, 21 (Tex.Crim.App.1978).

■ At trial, appellant presented the theory of self-defense to justify the stabbing. In rebuttal, the prosecution presented evidence, through the testimony of the victim's mother, that appellant had previously threatened the victim's life on several occasions. In his jury argument, the prosecutor summarized the evidence as showing that appellant was an aggressive and violent person who had a callous disregard for human life.

He then discussed the appellant's failure to apologize or show remorse for the stabbing to the victim's mother. The prosecutor then went further and stated: *"[Y]ou're seeing* the same lack of remorse *in court today* that has been in her heart ever since this whole episode with [the victim] began." (Emphasis added.) Clearly this remark pointed out to the jury that appellant had not exhibited remorse for the stabbing in court.

In *Dickinson v. State*, 685 S.W.2d at 322, the prosecutor made several questionable remarks, one of which was, "[Y]ou haven't seen one iota of remorse, one iota of shame." The defendant's objections to the remarks were overruled. The defendant in that case, like in this one, did not testify at either phase of the trial. That statement, along with the others, was held to be an indirect reference to the defendant's failure to testify. *Id.* at 324. The court noted that contriteness is a highly personal state of mind which must be communicated in order for others to know of it. In *Dickinson*, as in our case, the comment went to the defendant's failure to personally communicate, and not to a failure to communicate through other witnesses. *See also Johnson v. State*, 611 S.W.2d 649 (Tex. Crim.App.1981).

The remark in the instant case closely resembles the remark made in *Dickinson*. The language used here necessarily drew the jury's attention to a state of mind that appellant herself failed to exhibit to them in court. We hold this remark was a comment on appellant's failure to take the stand and was, therefore, error.

■ We further find this error to be reversible. The test to determine whether an error is harmless is whether there is a reasonable possibility the argument might have contributed to the conviction in view of the evidence adduced and the punishment assessed. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Garrett v. State*, 632 S.W.2d at 353–54. Thus, we must consider the punishment assessed appellant in determining whether she could have been harmed by the prosecutor's remark. Appellant was convicted of murder under TEX.PENAL CODE ANN. § 19.02 (Vernon 1974), with punishment enhanced by two prior felony convictions. Appellant pled not true to both enhancement paragraphs, but the jury found both to be true. The trial court's charge allowed the jury to assess punishment at imprisonment for a term within the range of "life, or for any term of not more than 99 years or less than 25 years." *See* TEX.PENAL CODE ANN., § 12.42(d) (Vernon Supp.1986). Appellant was assessed the maximum penalty allowable in this case, life.

We are also aware of the general rule that the prohibition against referring to the accused's failure to testify is mandatory, and the prejudicial effect of any reference to the accused's failure to testify is not usually cured by an instruction to the jury. *Owen v. State*, 656 S.W.2d at 459. Though this record is rife with evidence of appellant's guilt, we are unable to hold beyond a reasonable doubt that the improper prosecutorial argument did not contribute to the punishment assessed. Appellant's second ground of error is sustained.

In her third ground of error, appellant claims the trial court erred in failing to grant her motion to dismiss based upon the State's violation of the Speedy Trial Act. TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1986). Appellant argues that on its face the record indicates that the State did not announce ready within 120 days of the commencement of this criminal action, and that she is, therefore, entitled to a dismissal. The following is a chrono-

logical delineation of the relevant dates in this case:

1) appellant arrested—April 19, 1984 (continuously jailed)
2) appellant indicted—May 30, 1984
3) State files announcement of ready—September 5, 1984 (130 days after arrest)
4) appellant files motion to dismiss—September 6, 1984
5) hearing held and motion denied—September 13, 1984
6) motion to dismiss reurged and denied and trial begun—January 7, 1985
7) appellant convicted, sentenced and notice of appeal and pauper's oath given—January 11, 1985
8) appellant filed designation of matters to be included in the record (including transcription of all pretrial hearings)—February 14, 1985 (34 days after notice of appeal)
9) letter notifying counsel of completion of record sent—March 22, 1985
10) first renotification letter sent—April 4, 1985
11) second letter notifying counsel of completion of record sent—April 25, 1985
12) second renotification letter sent—May 7, 1985
13) final approval of record without a hearing—May 29, 1985

The trial court did hold a hearing on appellant's motion to dismiss on September 13, 1984. The motion was denied. No transcription of that hearing appears in the record. Appellant did designate that it be included in the record. Appellant argues that the record "as it exists fails to show that the state was ready for trial," and, therefore, the trial court erred in denying the motion to dismiss. We disagree.

Appellant reurged this motion just prior to trial. In that second hearing the trial court asked the prosecutor: "[D]id I hear testimony from you or somebody in the district attorney's office that you'all had, in fact, been ready within 120 days?" The prosecutor replied, "[Y]es, sir." The trial court then stated that, unless appellant had additional evidence to offer that the State was not ready, the motion would be again denied. No additional evidence was offered.

It is impossible for this Court to determine if the prosecution presented adequate evidence that it had been ready for trial within the 120-day deadline because we do not have the benefit of a record of that hearing. It is the responsibility of the party who desires a transcription of the court reporter's notes included in the record to obtain a transcription from the court reporter and furnish it to the court's clerk. TEX.CODE CRIM.PROC.ANN. art. 40.-09(5) (Vernon Supp.1985). Thus, it was appellant's responsibility to ensure that the transcription of the hearing on her motion to dismiss was included in this record. Appellant also failed to object to the transcription not being included in the record as provided in article 40.09(7).

What does appear of record is the prosecutor's assurance to the trial court that the prosecution did present evidence at the initial hearing that it had been ready for trial before the deadline. Appellant has presented us nothing for review. In the absence of evidence to the contrary, we will presume the trial court denied appellant's motion upon adequate proof. *See Paige v. State*, 573 S.W.2d 16, 18 (Tex.Crim.App. 1978); *Fuentes v. State*, 673 S.W.2d 207, 210 (Tex.App.—Beaumont 1984, pet. ref'd). Appellant's third ground of error is overruled.

The judgment of the trial court is reversed, and the case is remanded.