ACCEPTED
03-14-00585-CR
7666064
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/3/2015 3:50:02 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00585-CR

In the
Court of Appeals for the Third District of Texas
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/3/2015 3:50:02 PM
JEFFREY D. KYLE
Clerk

_____

No. 13-2081-K277
In the 277th Judicial District Court
Williamson County, Texas

_____

Leovardo Cantos
*Appellant*
v.
THE STATE OF TEXAS
*Appellee*

_____

STATE'S BRIEF IN RESPONSE

_____

Jana Duty
District Attorney
Williamson County, Texas

Daniel Sakaida
State Bar No: 24084601
Assistant District Attorney
daniel.sakaida@wilco.org

John C. Prezas
State Bar No: 24041722
Assistant District Attorney
jprezas@wilco.org
405 Martin Luther King, Box 1
Georgetown, Texas 78626
(512) 943-1234
(512) 943-1255 (fax)

ORAL ARGUMENT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rules of Appellate Procedure 39.1 and 39.7, Appellant has requested oral argument in this case. Therefore, to preserve its right to argue, the State requests oral argument although the State believes that the facts and legal arguments are adequately presented in the briefs and record, and that the decisional process would not be significantly aided by oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), the State would supplement Appellant's identification of the list of parties as follows:

### Presiding Judge at Trial

- The Honorable Stacey Mathews, 277th Judicial District Court, Williamson County, Texas.

### Attorneys for the State

- Mr. Daniel Sakaida (appeal), Assistant District Attorney for Williamson County, 405 Martin Luther King, Georgetown, Texas 78626.

- Mr. John C. Prezas (appeal), Assistant District Attorney for Williamson County, 405 Martin Luther King, Georgetown, Texas 78626.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

IDENTIFICATION OF THE PARTIES ................................................ ii

TABLE OF CONTENTS............................................................. iii

INDEX OF AUTHORITIES.......................................................... iv

STATEMENT OF FACTS ........................................................... 1

SUMMARY OF THE ARGUMENT .................................................... 10

REPLY TO ISSUE FOR REVIEW .................................................... 10

   I.   The District Court did not abuse its discretion in admitting an extraneous violent act as rebuttal evidence to Appellant's claims of self-defense at trial. ....10

     A.  Defense claims of self-defense opened the door under Texas Rule of Evidence 404(b) to the admission of relevant prior violent acts by the defendant................................................................12

     B.  The trial court did not abuse its discretion under Texas Rule of Evidence 403 when it allowed testimony of Appellant's prior violent act after careful examination, consideration of case law, and strictly limiting the scope of questioning....................................................................17

     C.  Any remaining error was cured by the trial court's *sua sponte* limiting instruction. ................................................................25

PRAYER ......................................................................29

CERTIFICATE OF COMPLIANCE....................................................30

CERTIFICATE OF SERVICE .......................................................30

**Texas Cases**

*Armstrong v. State*,
   850 S.W.2d 230 (Tex. App.—Texarkana 1993), aff'd, 897 S.W.2d 361 (Tex. Crim. App. 1995) ...................................................................................................14

*Bass v. State*,
   270 S.W.3d 557 (Tex. Crim. App. 2008) ...........................................................14

*Casey v. State*,
   215 S.W.3d 870 (Tex. Crim. App. 2007) ................................................. 14, 21, 23

*Chatham v. State*,
   889 S.W.2d 345 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd)..................14

*Clark v. State*,
   No. 03-11-00085-CR, 2015 Tex. App. Lexis 1765 (Tex. App.—Austin Feb. 19, 2014) (mem. op., not designated for publication) ...............................................15

*Colburn v. State*,
   966 S.W.2d 511 (Tex. Crim. App. 1998) .................................................... 25, 27

*Devoe v. State*,
   354 S.W.3d 457 (Tex. Cim. App. 2011)..............................................................11

*Escort v. State*,
   713 S.W.2d 733 (Tex. App.—Corpus Christi 1986, no pet.) .................. 12, 27, 28

*Garcia v. State*,
   887 S.W.2d 862 (Tex. Crim. App. 1994) ...........................................................26

*Gigliobianco v. State*,
   210 S.W.3d 637 (Tex. Crim. App. 2007) .................................................... 18, 19

*Halliburtion v. State*,
   528 S.W.2d 216 (Tex. Crim. App. 1975) ............................... 4, 13, 14, 15, 17, 24

*Hammock v. State*,
    46 S.W.3d 889 (Tex. Crim. App. 2001) ...............................................................26

*Johnson v. State*,
    932 S.W.2d 296 (Tex. App.—Austin 1996, pet ref'd) ........................... 13, 18, 24

*Johnson v. State*,
    963 S.W.2d 140 (Tex. App.—Texarkana 1998, pet. ref'd) .................................14

*Jones v. State*,
    241 S.W.3d 666 (Tex. App.—Texarkana 2007, no pet.)......................................14

*Keller v. State*,
    No. 03-13-00501-CR, 2014 Tex. App. LEXIS 12506 (Tex. App.—Austin Nov.
    20, 2014, no pet.) .......................................................................................18

*Lemmons v. State*,
    75 S.W.3d 513 (Tex. App.—San Antonio 2002, pet. ref'd).................................14

*Lolmaugh v. State*,
    514 S.W.2d 758 (Tex. Crim. App. 1974) ...........................................................19

*Montgomery v. State*,
    810 S.W.2d 372 (Tex. Crim. App. 1991) (op. on reh'g) ......................... 11, 17, 18

*Morrow v. State*,
    735 S.W.2d 907 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd) ..................14

*Moses v. State*,
    105 S.W.3d 622 (Tex. Crim. App. 2003) ............................................... 11, 13, 24

*Powell v. State*,
    63 S.W.3d 435 (Tex. Crim. App. 2001) .............................................................14

*Robinson v. State*,
    844 S.W.2d 925 (Tex. App.—Houston [1st Dist.] 1992, no pet.).......................14

*Russo v. State*,
    228 S.W.3d 779 (Tex. App.—Austin 2007, pet. ref'd).......................................11

*Williams v. State*,
937 S.W.2d 479 (Tex. Crim. App. 1996) ............................................................25

*Winegarner v. State*,
235 S.W.3d 787 (Tex. Crim. App. 2007). ..........................................................18

**Rules**

Tex. R. Evid. 403 ...................................................................................... 12, 18

Tex. R. Evid. 404 ...................................................................................... 13, 18

Tex. R. Evid. 404(b) .................................................................................. 12, 18

Tex. R. Evid. 105 ............................................................................................26

Tex. R. Evid. 105(b)(1)...................................................................................26

TO THE HONORABLE COURT OF APPEALS:

STATEMENT OF FACTS

The state wishes to clarify the following facts to supplement those addressed in Appellant's brief.

On February 18, 2015, Appellant was indicted on one count of aggravated assault with a deadly weapon, with a deadly weapon notice. C.R. 11.

In his opening statement at trial, Appellant repeatedly raised the issue of self-defense, simultaneously stating that the evidence to come would be conflicting. R.R. vol. VI p. 26. For example, Appellant's trial counsel stated:

> If Lee waits for Juan to punch him in the face, and his eye gets busted up, are the roles reversed? I don't know. I'm pretty sure he didn't want to find out. The force immediately necessary at that point to protect himself from somebody else's use of unlawful force, that's self-defense. Consent. He invited that. He could have moved, guys. He could have moved.

R.R. vol. VI p. 30. Shortly after, Appellant's trial counsel circled back and again asked the jury to consider self-defense:

> And when you think about consent and self-defense, think about was it reasonably necessary at that time. This wasn't a fight that lasted five or six minutes. This -- You'll hear from all of the witnesses -- all of the witnesses that come today, if not all of them, most of them, that this happened just a few seconds. Just a few seconds.

R.R. vol. VI p. 31. The State noted in its opening statement that it anticipated Appellant asserting self-defense. R.R. vol. VI p. 24. Immediately following

1

opening statements, the district court stated in a bench conference that the defense had "definitely" opened the door to rebuttal evidence by discussing self-defense in opening statements and in voir dire. R.R. vol. VI pp. 32-33.

During its case in chief, the State showed that Appellant and the victim, Juan Davila, were on opposing teams in an amateur softball league in Round Rock, Texas. Their teams played against each other on November 14, 2013, and during that game, Appellant and the victim were involved in an altercation at second base. R.R. vol. VI pp. 33-39. In an attempt to avoid being tagged out, Juan dove head first towards the base, striking Appellant's knee in the process. R.R. vol. VI p. 48. Appellant immediately yelled out, and pushed the victim back down as he attempted to get up. *Id*. Gary Clements, the umpire, described the play as only "incidental contact." R.R. vol. VI pp. 122-123. One witness, Andria White, recounted that the slide looked aggressive, and was a dirty play. R.R. vol. X p. 43. All witnesses testified that Appellant and the victim exchanged words, but broke off after the umpires admonished them. R.R. vol. VI pp. 4949, 123-124, 161-163, 244; R.R. VII, p. 7.

Later, one of Appellant's teammates, Danny Teller, testified that as he was heading up to bat, he overheard Appellant mutter in the dugout shortly before batting, "you have something coming to you." R.R. vol. VI p. 51. Appellant was next up to bat, and the victim was on first base at the time. *Id*. At bat, Appellant hit

the ball to the pitcher, who then tossed the ball to the victim. R.R. vol. VI p. 54. Juan caught the ball, and was waiting to tag out Appellant at first base. Umpire Clements testified that Appellant intentionally put his hands up "from a running position to what I would liken to a block where his hands and arms come up as he ran through" the victim. R.R. vol. VI p. 136. This knocked the victim down, who then got back to his feet with the ball in his hand, and threw it into the ground near Appellant. R.R. vol. VI p. 141. Clements testified that Appellant and the victim began "jawing" at each other, and exchanged heated words. R.R. vol. VI p. 143. Multiple witnesses also testified that both the victim and Appellant exchanged blows, which quickly knocked the victim to the ground. R.R. vol. VI p. 58 (Teller), vol. IX p. 38 (Orozco). Teller also testified that he couldn't tell who threw the first punch, while Orozco testified that it was Appellant. R.R. vol. VI p. 58, vol. IX p. 38.

Virtually all eyewitnesses testified that Appellant then kicked the victim in the head while he was down. *See, e.g.*, R.R. vol. VI p. 58 (Teller), pp. 147-148 (Clements), vol. VIII pp. 106-107 (Hollywood). Brian Hollywood, an off-duty police officer, described the kick as "unbelievably hard, like as if you're trying to kick a football or a dog that's attacking you." R.R. vol. VIII pp. 106-107. Umpire Clements ejected both Appellant and the victim as a result of their participation in the altercation. R.R. vol. VI p. 60.

3

Shortly after the game, multiple individuals viewed Appellant's Facebook profile, and saw the following post:

> I guess next time you will think twice about taking out someone's knee in softball. Haha! How's your face? Cause my foot is killing me!!! Not to mention how far u flew when u were "standing your ground." Lmao. U picked the wrong Mexican homeboy!!!

State's Exhibit 2.

The victim was severely injured, and still suffers severe memory loss and altered personality traits to this day. He testified that he remembered having words with Appellant, throwing the ball down which then bounced and struck defendant, and then himself being on the ground. He remembers nothing past that. R.R. vol. VI pp. 195-206. As a result of his injury, he was subjected to serious brain surgery, with a week in the hospital, and months of outpatient therapy. R.R. vol. VI pp. 214-226. The victim's surgeon testified that he probably would have died without the surgery. R.R. vol. VIII p 32.

Before bringing in the jury on the second day of trial, the district court entertained argument regarding the admissibility of an extraneous bad act. R.R. vol. VIII pp. 5-11. The State argued that *Halliburtion v. State*, 528 S.W.2d 216, 218 (Tex. Crim. App. 1975) supported the admissibility of other violent acts to show intent of a defendant, specifically in this case because the prior was recent and similar to the instant assault. *Id*. pp. 5-6. The extraneous bad act was actually a conviction for assault on a peace officer, for which Appellant was on a formal

4

probation at the time of trial. *Id*. Appellant objected on the basis of Texas Rule of Evidence 404, asserting that motive, intent, and plan were not at issue. *Id*. Appellant also requested that the court balance the prejudicial and probative values of the extraneous act. *Id*. at p. 9. The district court then took the issue under advisement. *Id*.

While the jury was on lunch break later that day, the district court again addressed the issue of the extraneous bad act. R.R. vol. VIII pp. 126-128. The court strictly limited what exactly would be admitted into evidence:

> My ruling is going to be I looked at -- kind of looked at the rules, and I did a balancing test pursuant to 403, and I think having heard the facts of this case and what the State has proffered would be the evidence in that other case, I think that my ruling will be I will allow the officer to testify as to the incident. However, I think it's more prejudicial than probative to go into any of the judicial facts, anything that happened after. So not that he's on probation, not that he pled guilty. So I'm -- I think I'm comfortable with the officer testifying as to the actions what happened right before in the assault. However, we're not going to get into the fact that he's on probation. I think that would be a little more prejudicial that he has a conviction for it.

R.R. vol. VIII pp. 126-127. Appellant again objected that the testimony would be more prejudicial than probative, and would lead to an "emotional jury verdict." *Id*. at p. 127. The district court again noted that it had conducted a balancing test, and had limited the testimony accordingly, but that the parties would be permitted to take the officer on voir dire before actually admitting the testimony in to evidence. *Id*. at p. 128.

5

Later that afternoon, the court yet again took up the issue of the extraneous bad act, and permitted both sides to take the officer on voir dire outside the presence of the jury. R.R. vol. IX pp. 4-25. Appellant again objected on the grounds of 404(b). R.R. vol. IX p. 4. The State elicited testimony on a direct examination under voir dire which complied with the court's ruling. This drew another 404(b) objection by the Appellant, this time objecting specifically to testimony regarding that he was under arrest at the time. *Id*. at p. 11. The district court again ruled that the evidence would be admissible in light of the defensive theory, but still limited the scope of the evidence after balancing in accordance with Texas Rule of Evidence 403. *Id.* at pp. 16-17. The court observed that it was "pretty clear these facts are fairly aligned." *Id*. The district court again advised that this was for a "very limited purpose," and that a limiting instruction would be given in the jury charge. R.R. vol. IX p. 21. Appellant did not request an oral or written limiting instruction regarding this evidence. The court further prohibited any reference to not only Appellant's prior conviction, but any testimony regarding that Appellant was even charged with assault on a peace officer as a result of the extraneous bad act. *Id.* at pp.24-25.

The State then called Officer McRae to the stand with the jury present. After going over his training and experience, Officer McRae testified that he had previously arrested the defendant on March 12, 2010, and identified Appellant in

open court. R.R. vol. IX. pp. 28-29. Further, Officer McRae testified that Appellant threatened him after being arrested, specifically stating:

> "Open these doors. See if I don't punch you in the face. Get someone else to open up this door. I swear to God you open this door, I'm going to fuck you up. I'm not even playing. Seriously, bro, when we get to the fucking station, get somebody else to open the fucking door because if you're anywhere near me, ooh."

R.R. vol. IX pp. 28-29. When Officer McRae did in fact open the door, Appellant kicked the door very hard, spraining Officer McRae's wrist and causing pain. *Id*. No evidence was elicited regarding the subsequent charge, conviction, or formal probation. Appellant presented a brief cross-examination, clarifying that Appellant had requested to use the restroom before assaulting Officer McRae. R.R. vol. p.30.

In closing arguments, the State stressed the similarities between the extraneous bad act and the instant case:

> [the prior assault] shows his intent to hurt Juan, and the reason why is because in our case, he made threatening statements. "You'll get yours." "You'll have what's coming to you." And he carried through with that threat by kicking -- kicking again, this time Juan. That extraneous offense is relevant to show you his intent, that he's not defending himself. He's intending to hurt back. He hurts back. He gets mad about what happened at second base; a half inning later, he's intending to hurt Juan. And he does.

R.R. vol. X p. 90 (Jackie Borcherding for the State). Later, Prosecutor Josh Reno also draws the analogy between the assaults with Appellant's threats before:

> Yeah, we brought you an assaultive case that happened out of Austin. He's assaultive. This defendant has an assaultive history, and you need to know that why? Because now that we've proven our case beyond a

7

reasonable doubt, he's claiming self-defense. He's saying, "Yeah, I assaulted you, Juan, but I had to. I had to. I had to defend myself." Really? Really? Let's break it down, ladies and gentlemen. Was this reasonable and immediately necessary? Anything that this defendant did, was it reasonable or immediately necessary? Look at the law on self-defense.

R.R. vol. X pp. 113-114.

Indeed, Applicant repeatedly raised the issue of self-defense in closing arguments, including the following statements:

- "Mr. Cantos defended himself and had every right to defend himself. What the prosecution is telling you, all this stuff they're bringing you, are red herrings." R.R. vol. X p. 91.

- "Now, make no mistake about it. That fight was started by Mr. Davila throwing the softball." R.R. vol. X p. 92.

- "And what does Mr. Davila do? Raises his hands. Do you have to wait for someone to strike you in order to defend yourself? . . . Now, once there is a fight, once Mr. Davila indicates that he's going to fight, that he wants to hurt him, that he wants to hit Lee, then Lee has every right in the world to defend himself from serious bodily injury. All right. The method he does that, he has a right to subdue him. That happens to be a kick in the head that results in a terrible tragedy." R.R. vol. X p. 93.

- "That kick didn't even subdue Mr. Davila. He was still angry. They were both angry. But Lee was defending himself. He was not the aggressor." R.R. vol. X p. 94.

- "He [Appellant] was going to leave it all on the field, but for the softball being thrown followed by a confrontation." R.R. vol. X p. 95.

- "And I want to explain something about self-defense. Self-defense is saying yes, it did happen. There was an assault. But it's okay that it was an assault. It's okay because I'm justified because I was fearful. I

8

was attacked. I was in a fight. I was in a fight that I didn't start and because of that, I had to defend myself knowing the best what I know now. All right. And once that happens, once you establish there's self-defense, if you believe that, the State has to disprove that beyond a reasonable doubt. They have to prove to you that it wasn't self-defense. And if you have a doubt in your mind, "Well, I think maybe it was self-defense," then that is not guilty. Like I just said, there's a difference between a jury and a lynch mob. Reason dictates your decision, looking at the facts dictates your decision, not emotion, not these pictures, not thinking about his family and whatnot. Thinking about what happened at that game during that game." R.R. vol. X pp. 98-99.

- "He [the victim] stood right there in the base path, put his hands right here, right, to tag. What is that? What does that mean? Consent." R.R. vol. X pp. 103-104.

- "I am not saying that Juan consented to brain surgery. Rene and I are not telling you guys that. That was an extremely tragic, tragic end to this. But if you start telling people that they got to wait to get hit before they can defend themselves, even if they're tougher, which we don't know; Juan's in the best shape of his life. He's not afraid of anybody. And a person without fear can be very dangerous." R.R. vol. X p. 109.

The district court entered a limiting instruction in the written jury charge, instructing the jury that while the State had introduced evidence of the extraneous bad act, it was only for the purpose of showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. C.R. vol. I p. 63.

The jury found Appellant guilty of the offense of aggravated assault as alleged in the indictment, complete with the deadly weapon finding. R.R. vol. X pp. 122-123. Appellant elected to go to the district court for punishment, and after

9

hearing State testimony regarding multiple prior convictions as well as mitigating factors from a psychologist testifying for the defense, the trial court assessed his punishment at fifteen years in the Institutional Division. R.R. vol. XII p. 50; C.R. 57, 79-81.

## SUMMARY OF THE ARGUMENT

In his sole issue for review, Appellant alleges that the trial court erred in admitting limited facts about an extraneous assault in response to Appellant's trial argument of self-defense. The trial court in this case conducted a careful analysis of the admissibility of the evidence in question, previewed the evidence under voir dire, entered a limiting instruction, and severely restricted the scope of questioning on the subject. Therefore, the trial court did not abuse its discretion in this case, and Appellant's conviction should be affirmed.

## REPLY TO ISSUE FOR REVIEW

**I. The District Court did not abuse its discretion in admitting an extraneous violent act as rebuttal evidence to Appellant's claims of self-defense at trial.**

Under Texas Rule of Evidence 401, evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. Juries are "entitled to know all relevant evidence surrounding facts and circumstances of the charged offense."

10

*Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Cim. App. 2011). Indeed, the thrust of Texas Rules of Evidence 402 and 403 is to favor admissibility of evidence, and there is a presumption to that end. *See Russo v. State*, 228 S.W.3d 779, 799 (Tex. App.—Austin 2007, pet. ref'd).

Further, the admissibility of evidence is firmly within the sound discretion of the trial court and such decisions are not to be disturbed on appeal absent an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). That is, admissibility of evidence is inherently a question for trial courts, and an appellate court should affirm a trial court's decision as long as it is within the "zone of reasonable disagreement." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). An appellate court "cannot simply substitute its own decision for the trial court's" by conducting a de novo review, and should not conduct a wholly independent judgment of admissibility. *Id*. Reversal of a trial court decision regarding admissibility of evidence should be rare "and only after a clear abuse of discretion." *Id*.

Appellant alleges that the trial court in this case abused its discretion in admitting into evidence limited testimony of an extraneous bad act. Specifically, Appellant alleges that it was error to allow testimony of his prior assault on a peace officer in March of 2010, a little over three years before the incident which gave rise to this case. *See Brief for Appellant* at 19. Appellant believes the bad act

11

should have been excluded under first under Texas Rules of Evidence 404(b), and if not under that rule, under 403. *Id.* at 24. Appellant is wrong on both issues, and any error which did occur was cured by the jury charge the trial court proactively issued.

**A. Defense claims of self-defense opened the door under Texas Rule of Evidence 404(b) to the admission of relevant prior violent acts by the defendant.**

The trial court properly admitted evidence of a prior violent act by the Appellant in response to his repeated argument of self-defense at trial. Appellant asserts that testimony regarding his prior assault on a peace officer should have been excluded under Texas Rule of Evidence 404 as he objected at trial. *See Brief for Appellant* at 23-24, R.R. vol. IX pp. 4, 11. Specifically, he asserts that the State put on overwhelming evidence of his guilt, and therefore, the admission of his prior bad act was inherently prejudicial and inflammatory, and "could not have been that helpful to the jury in resolving the issue of self-defense." *See Brief for Appellant* at 26. To support this, Appellant cites a 1986 case out of the Corpus Christi Court of Appeals which held that the admission of an extraneous offense in that case "was simply overkill." *Id.*; *Escort v. State*, 713 S.W.2d 733, 737-738 (Tex. App.—Corpus Christi 1986, no pet.).

12

While relevant evidence is generally admissible, a defendant should only be tried for the charged crime and not his criminal propensities. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Cim. App. 2003). Therefore, Texas Rule of Evidence 404 allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity, such as to prove intent, establish a motive, show opportunity or preparation, or rebut a defensive theory. *Id*; *Halliburton v. State*, 528 S.W.2d 216, 219 (Tex. Crim. App. 1975) (op. on reh'g) (evidence should be admitted if it tends to disprove a defensive theory). To evaluate the probative value of evidence, courts consider the presence of similarity between the extraneous act or offense and the offense charge, closeness in time between the extraneous and charged offenses, and the availability of alternative sources of proof in order to evaluate the probative value of evidence. *Johnson v. State*, 932 S.W.2d 296, 303 (Tex. App.—Austin 1996, pet ref'd); *see also*, *Halliburton*, 528 S.W.2d at 219 (presence or absence of similarity is not absolutely determinative of admissibility, but helpful in evaluating probative value and relevancy). "And, under Rule 402, there is a presumption of admissibility of relevant evidence." *Moses*, 105 S.W.3d at 626.

Specifically relevant to this case, it is well settled that when a defendant claims self-defense, the State, in order to show his intent, may introduce rebuttal evidence of prior violent acts by the accused where he was the aggressor in order

13

to show intent. *Halliburton v. State*, 528 S.W.2d 216, 218-19 (Tex. Crim. App. 1975); *Armstrong v. State*, 850 S.W.2d 230, 236 (Tex. App.—Texarkana 1993), aff'd, 897 S.W.2d 361 (Tex. Crim. App. 1995).[1] "Extraneous-offense evidence is not inadmissible under Rule 404(b) when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime." *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). This theory applies to defensive theories or positions first posited during opening statement, and such statements may open the door to the admission of extraneous evidence by the State. *Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001); *see also Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008).

In this case, Appellant did in fact explicitly raise the issue of self-defense in his opening statement multiple times. R.R. vol. VI p. 30-31. These references were not mistakes. The bulk of Appellant's closing arguments also focused on a theory of self-defense, and both of his trial attorneys belabored the theory at length in argument and in examination of witnesses. R.R. vol. X pp. 91-109. Therefore, the State was entitled to admit rebuttal evidence in the form of a remarkably similar prior violent act by Appellant in accordance with *Halliburton* and its progeny.

---

[1] Numerous courts of appeal have repeatedly held the same over the years, forming a solid consensus of opinion. *See, e.g., Johnson v. State*, 963 S.W.2d 140, 144 (Tex. App.—Texarkana 1998, pet. ref'd); *Jones v. State*, 241 S.W.3d 666, 669 (Tex. App.—Texarkana 2007, no pet.); *Morrow v. State*, 735 S.W.2d 907, 909 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd); *Chatham v. State*, 889 S.W.2d 345, 350 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd); *Robinson v. State*, 844 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.); *Lemmons v. State*, 75 S.W.3d 513, 523 (Tex. App.—San Antonio 2002, pet. ref'd).

14

While the Court of Criminal Appeals has stated that the presence of similarity between the instant offense and the extraneous conduct is not immediately dispositive, it may be helpful in analyzing the relevance of a specific piece of evidence. *Halliburton*, 528 S.W.2d at 219; *see also*, *Clark v. State*, No. 03-11-00085-CR, 2015 Tex. App. Lexis 1765 at *14-15 (Tex. App.—Austin Feb. 19, 2014) (mem. op., not designated for publication) (affirming admission of a prior act which was noticeably similar to the charged act, and tended to disprove the defendant's defense of fabrication). At trial, the State directed the court to *Halliburton* as controlling law, and argued that the extraneous assault in this case closely mirrored the instant offense. R.R. vol. VIII pp. 6-11. Specifically, the State contended that in both assaults Appellant anticipated hurting his victims, expressed threats, and then acted on those threats. *Id.* Appellant also believed he was originally wronged in the extraneous case by his arrest and being denied the ability to use the restroom, and in the instant case when the victim slid into his knee at second base. After stewing on his perceived wrongs, Appellant chose to kick the victim in this case as he chose to kick the door into Officer McRae in the extraneous act. R.R. vol. X p. 90 (Jackie Borcherding, closing argument for the State). The extraneous act was additionally not that far removed in time from the instant offense, the former occurring in March of 2010, and the latter in November of 2013. R.R. vol. IX p. 7. In fact, Appellant was still on probation for that assault

15

at the time of the offense in this case. R.R. vol. IX p. 18 (trial court noting the probation, but excluding that fact from submission to the jury).

Shortly before admitting the evidence, and after hearing the officer's testimony on voir dire, the trial court specified that it was admitting the evidence specifically for this allowable purpose. R.R. vol. IX pp.17-18. Specifically, the court stated "I'm allowing it… to rebut a defensive theory, the State has – I mean you've raised self-defense, which opens the door for them to be able to put in some evidence." *Id*. When Appellant at trial attempted to specify that the real purpose was lack of mistake and intent, the court reiterated: "I mean, and it goes to intent, and it's really to – it's really to rebut the defensive theory of self-defense." *Id.*

Both prosecutor Jackie Borcherding and prosecutor Josh Reno stressed in closing arguments that the jury consider the extraneous act for the permissible reason of rebutting self-defense, and not simply argue impermissible character conformity. Specifically, Jackie Borcherding highlighted the similarities between the cases, and directly attacked the self-defense argument raised by Appellant. R.R. vol. X p. 90. Later, Prosecutor Josh Reno again compared the assaults:

> Yeah, we brought you an assaultive case that happened out of Austin. He's assaultive. This defendant has an assaultive history, and you need to know that why? Because now that we've proven our case beyond a reasonable doubt, he's claiming self-defense. He's saying, "Yeah, I assaulted you, Juan, but I had to. I had to. I had to defend myself." Really? Really? Let's break it down, ladies and gentlemen. Was this reasonable and immediately necessary? Anything that this defendant

16

did, was it reasonable or immediately necessary? Look at the law on self-defense.

R.R. vol. X pp. 113-114. Prosecutor Josh Reno explicitly lays out that Appellant's "assaultive history" was *only* presented as a response to Appellant's "I had to defend myself" claim at trial. *Id*. Therefore, the prior assault was properly admitted and argued by the State under Rule 404(b) and *Halliburton* to rebut Appellant's theory of self-defense, and the trial court did not abuse its discretion.

**B. The trial court did not abuse its discretion under Texas Rule of Evidence 403 when it allowed testimony of Appellant's prior violent act after careful examination, consideration of case law, and strictly limiting the scope of questioning.**

Even when admissible under Rule 404, evidence may be excluded by the trial court under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Montgomery v. State*, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991) (op. on reh'g.). Since all evidence tending to show guilt is prejudicial, a trial court must evaluate if the prejudice is "unfair," that is, the court examines if the evidence tends "to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990), on reh'g (June 19, 1991) (*citing* Advisory Committee's Note to Fed.R.Evid. 403). In close cases under this rule, there is a presumption favoring admissibility. *Johnson v. State*, 932 S.W.2d 296,

17

300 (Tex. App. –Austin 1996, pet. ref'd) (*citing Montgomery*, 810 S.W.2d at 377, 378). Rule 403 "gives the trial court considerable latitude to assess the courtroom dynamics, to judge the tone and tenor of the witness's testimony and its impact upon the jury, and to conduct the necessary balancing." *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007) "The rule thus allows different trial judges to reach different conclusions in different trials on substantially similar facts without abuse of discretion." *Id*.

Texas Courts have developed a multi-factor balancing analysis which a trial court must apply, even if the factors blend together in practice. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2007); *see also*, *Keller v. State*, No. 03-13-00501-CR, 2014 Tex. App. LEXIS 12506 at *13-14 (Tex. App.—Austin Nov. 20, 2014, no pet.) (mem. op., not designated for publication) (not binding, but persuasive in that it quotes the *Gigliobianco* balancing factors as still authoritative). Specifically, a trial court should balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

18

*Gigliobianco*, 210 S.W.3d at 641-642. While an appellate court should also use this framework, review of a trial court's decision is still subject to an abuse of discretion standard detailed above. In this case, the trial court did in fact conduct a careful balancing test, stating: "I'm going to balance it to where – but I think it is probative for the specific – the specific instance of conduct that goes to rebut their defensive theory." R.R. vol. 9 p. 18. There were no less than three discussions between the trial court and counsel regarding the admissibility of this testimony, with the court considering case law, limiting the scope of questioning, and even taking Officer McRae on voir dire before admitting the evidence to the jury. R.R. vol. VIII pp. 5-11, 126-128; R.R. vol. IX pp. 4-25.

**_Inherent Probative Value_**. The trial court could have reasonably concluded that evidence of the prior violent act in this case had considerable inherent probative value in this case. *See supra* section I.A. This is particularly true in light of Appellant's overarching theme at trial of self-defense, as the trial court could have reasonably concluded that the evidence of the prior violent act would be inherently probative into Appellant's actual *mens rea*. "When the appellant made an issue of self-defense, motive became an issue," and prior similar acts are probative to show motive. *Lolmaugh v. State*, 514 S.W.2d 758, 759 (Tex. Crim. App. 1974). As the trial court noted, it is "pretty clear these facts are fairly aligned" between the prior violent act and the instant assault. R.R. vol. IX p. 16-17.

19

***State's Need***. The trial court could have reasonably concluded that the State's need for the testimony was considerable. Intent is inherently difficult to prove, and when the defendant frames intent as the primary issue in front of the jury via a self-defense claim, the State must respond by demonstrating that the defendant in fact acted with criminal *mens rea*. Appellant repeatedly raised the issue of self-defense in his opening statement, in questioning witnesses, and relied on a self-defense theory for the bulk of closing arguments. Of course, on appeal, Appellant now contends that the State "put on more than enough evidence about the incident to refute appellant's self-defense theory." *See Brief for Appellant* at 25. The issue of self-defense was in fact a live issue for debate at trial, and many facts in evidence could have given credence to Appellant's claims at trial. For example:

- The victim had previously struck Appellant at the incident at second base which at least one witness characterized as "a dirty play," and the jury could have found that Appellant actually feared for his safety based on the victim's prior behavior. R.R. vol. X p. 43 (Andrea White testifying).

- Umpire Clements, after observing the two men angrily talking to each other after the incident at second base, told both Appellant *and* the victim "Y'all both need to shut up." R.R. vol. VI. 123-125.

- As Appellant stressed in closing, the jury could have found that the victim consented to contact by remaining standing on first base when Appellant was running towards that base. R.R. vol. X pp. 103-104.

- There was testimony that after the initial contact, both Appellant and the victim began "jawing" at each. R.R. vol. VI p. 143.

20

- Multiple witnesses testified that the victim threw the ball at or nearly at Appellant, and Appellant asserted in closing arguments that this was the start of the fight. R.R. vol. X p. 92; R.R. vol. X pp. 92, 95. The victim himself admitted throwing the ball, and that it bounced and struck Appellant. R.R. vol. VI pp. 205-206.

- There was conflicting testimony over who threw the first punch, with at least one witness testifying that it was unclear who struck first, even though most indicate that Appellant struck first. R.R. vol. VI p. 58, vol. IX p. 38.

- Umpire Clements ejected both Appellant *and* the victim from the game immediately after the altercation in question, implying that it was at least a mutual fight or that both men were to blame. R.R. vol. VI p. 60.

Indeed, the Court would have taken all of this evidence into consideration. Officer McRae was the very last State's witness, and Appellant had raised the self-defense issue in opening statements and repeatedly in cross-examining the other State witnesses. Therefore, the trial court could have reasonably found that the State had a strong need for this evidence to demonstrate Appellant's state of mind when he assaulted the victim in this case.

*Unfair Prejudice* refers to the tendency of evidence to suggest a decision on an improper ground, often an emotional one. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). The trial court in this case explicitly noted the possibility of unfair prejudice with some of the testimony proposed by the State, and severely restricted the scope of questioning. R.R. vol. IX p. 18. While the trial court allowed Officer McRae to testify as to the actual assault, the court excluded evidence of

21

what Appellant was under arrest for at the time, that he was charged with Assault on a Peace Officer as a result of the incident, that he was in fact plead guilty to that charge, and that he was on probation for that case at the time of the assault in this case. R.R. vol. VIII pp. 126-127. The trial court noted in its balancing that those facts would in fact be "more prejudicial than probative to go into." *Id*. Accordingly, the trial court only permitted Officer McRae to testify that Appellant was under arrest, that he threatened the officer, and then that he carried through on his threat. R.R. vol. 9 pp. 25-29. Appellant also elicited testimony on cross examination that he needed to use the restroom at the time, that Officer McRae refused to stop, and that Appellant did in fact urinate himself in the back seat of the patrol vehicle. R.R. vol. 9 p. 30. This testimony was not of a nature that would horrify or repulse jurors, and in fact the only injury to Officer McRae was a sprained wrist. The trial court therefore did not abuse its discretion, and in fact admitted the minimum amount of testimony necessary to rebut Appellant's claims of self-defense.

*Confusion of the Issues*. Officer McRae's testimony regarding Appellant's prior assault was unlikely to confuse the jury as it was brief, particularly in the context of a multi-day trial. R.R. vol. 9. pp. 26-31 (entirety of Officer McRae's testimony). No other witnesses commented on the prior assault, and the State only briefly alluded to it twice in closing, both times for the allowable purpose of

22

showing Appellant's state of mind. R.R. vol. X p. 90 (Jackie Borcherding: "That extraneous offense is relevant to show you his intent"); R.R. vol. X pp. 113-114 (Josh Reno: "This defendant has an assaultive history, and you need to know that why? Because now that we've proven our case beyond a reasonable doubt, he's claiming self-defense"). In light of the limited use of the prior assault in this case combined with the court's *sua sponte* limiting instruction, the trial court could have reasonably found that the testimony did not confuse the issues that the jury was tasked with deciding.

*Misleading the Jury* refers to a tendency of evidence to be given undue weight by the jury on other than emotional grounds. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). This sort of misleading is most common when a jury is ill-equipped to judge the probative value of scientific evidence. *Id.* In this case, Appellant's prior assault was essentially of the same character as the instant offense, and was even less serious than the instant assault. Therefore, the trial court could have reasonably found that Officer McRae's testimony would not mislead the jury in its analysis of either assault.

*Undue Delay and Needless Presentation of Cumulative Evidence*. In this case, Officer McRae's testimony was the only time evidence of the prior assault was put before the jury. Additionally, that presentation was brief, taking up only five pages in the record, including Officer McRae's professional training and

23

experience. The trial court could have reasonably concluded that the brief presentation by one witness at the end of the State's case in chief would not unduly delay the trial or be in any way cumulative.

The first time the State addressed the issue of the prior assault with the trial court, it presented the court with a copy of *Halliburton v. State*, which the court took under advisement until after lunch that day. R.R. vol. VII pp. 5-11. After lunch, the court stated that it had conducted a careful Rule 403 balancing test. R.R. vol. VIII pp. 126-127. Since the trial court was only admitting the testimony for the "very limited purpose" of rebutting Appellant's claims of self-defense, it excluded virtually all facts but the bare minimum needed to detail the similarities between the two assaults. R.R. vol. IX p. 21. The trial court exercised its sound discretion in this case, and even if this was a close case, there is a presumption of admissibility. *Johnson v. State*, 932 S.W.2d 296, 300 (Tex. App.—Austin 1996, pet. ref'd) (presumption favoring admission in close cases). Appellant has failed to show that the trial court clearly abused its discretion after it conducted its balancing test. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Therefore, its ruling should not be disturbed on appeal, and Appellant's conviction should be affirmed.

## C. Any remaining error was cured by the trial court's *sua sponte* limiting instruction.

It is a fundamental feature of American jurisprudence that we "generally presume the jury follows the trial court's instructions in the manner presented." *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). To presume the opposite, that is, juries may or may not follow trial court instructions and are entitled to do so, would undermine the very construct of a jury trial. The presumption may be rebutted by actual evidence that the charge failed to have the intended effect. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996) ("we will not reverse in the absence of evidence that the jury was actually confused by the charge").

When evidence is admissible for one purpose but not for another, a trial court must, on request, restrict the evidence to its proper scope and instruct the jury. Tex. R. Evid. 105(a). Subsection (b) of Rule 105 outlines how to preserve a claim of error under this rule. Specifically relevant to this case, Texas Rule of Evidence 105(b)(1) reads:

> A party may claim error in a ruling to admit evidence that is admissible against a party or for a purpose - but not against another party or for another purpose - only if the party requests the court to restrict the evidence to its proper scope and instruct the jury accordingly.

25

Tex. R. Evid. 105(b)(1). That is, the burden of requesting a limiting instruction is on the party opposing admission. *See Garcia v. State*, 887 S.W.2d 862, 878-79 (Tex. Crim. App. 1994)[2] (reaffirmed in *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001)).

In the instant case, despite three distinct discussions regarding the admissibility of the evidence in question and taking the witness on voir dire, Appellant never requested a limited instruction, and therefore, was not entitled to an oral limiting instruction. *See Garcia v. State*, 887 S.W.2d 862, 878-79 (Tex. Crim. App. 1994) (reaffirmed in *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001)) (burden to request a Tex. R. Evid. 105 limiting instruction is on the party opposing admission). Nevertheless, the trial court *sua sponte* ordered that a limiting instruction would appear in the written jury charge. R.R. vol. IX p. 21. The entered instruction read:

> The Defendant is on trial solely on the offense alleged in the indictment. The State has introduced evidence of a crime, wrong, or act other than the offense alleged in the indictment in this case and with reference to such crime, wrong, or act, you are instructed that said evidence was admitted only for the purpose of showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if it does.

---

[2] "once evidence is received without a proper limiting instruction, it becomes part of the general evidence in the case and may be used as proof to the full extent of its rational persuasive power. *See* 1 Edward W. Cleary et. al., *McCormick on Evidence* 4th Ed. § 54 (1992). Once admitted, the fact that evidence might have been inadmissible for certain purposes if the proper objection had been made does not limit its use. *Id.*"

C.R. 63. Under Texas law then, we presume that the jury followed this instruction, and only considered Appellant's prior assault for the purpose of rebutting Appellant's self-defense argument at trial. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Appellant has pointed to no evidence rebutting this presumption, and "did not file a motion for new trial alleging juror misconduct or obtain a hearing to adduce facts not in the record." *Id*.

Acknowledging this, Appellant cites to *Escort v. State* in a footnote, wherein the Corpus Christi Court of Appeals held that a limiting instruction was ineffectual in obviating the "inflammatory effect" of admitting into evidence an extraneous offense. *See Brief for Appellant* at 28 fn. 1; *Escort v. State*, 713 S.W.2d 733, 737-738 (Tex. App.—Corpus Christi 1986, no pet.). *Escort* is nearly three decades old, and not controlling law; nor is it persuasive.

First, that case arose from a murder trial where the appellant was alleged to have murdered her common-law husband or boyfriend. *Id* at 734. The alleged extraneous violent act was a witness's testimony that the defendant had previously killed her ex-husband in a fight. *Id*. at 735. Evidence of a prior murder in a murder case is no doubt more inflammatory than the admission of a prior assault which caused a sprained wrist in a second-degree aggravated assault with a deadly weapon causing serious bodily injury trial.

27

Second, *Escort* specifically held that "the issue in this case was who was the aggressor," and that there was no testimony regarding who was the aggressor in the prior altercation and homicide. *Id.* at 737. In the instant case, the issue of "who was the aggressor" is indeed at issue, but this time, Officer McRae provided clear testimony that Appellant was in fact the aggressor in the extraneous assault. R.R. vol. IX pp. 28-29. Therefore, even under *Escort*, Officer McRae's testimony was a permissible rebuttal of a defense theory of self-defense in a way that the prior murder could not have been in *Escort*. Further, the *Escort* court specifically based its ruling of reversible error in part on the fact that the appellant in that case received the maximum punishment allowable, thereby implying that the jury had in fact been inflamed by the testimony. *Escort*, 713 S.W.2d at 738. In the instant case, Appellant was not sentenced by the jury, and therefore, any inflaming effect cannot be inferred from his 15-year sentence imposed by the trial court. Being charged with a second-degree felony, Appellant faced a term of sentence between 2 and 20 years, and received significantly less than the maximum allowable.

Appellant has not refuted the presumption that the jury in this case followed the trial court's extraneous offense limiting instruction, and therefore any error that did occur has already been cured.

## PRAYER

Wherefore, the State respectfully requests that this Court affirm the conviction.

Respectfully submitted,

**Jana Duty**
District Attorney
Williamson County, Texas

/s/ Daniel Sakaida
Daniel Sakaida
State Bar No: 24084601
Assistant District Attorney
405 Martin Luther King, Box 1
Georgetown, Texas  78626
(512) 943-1234
(512) 943-1255 (fax)
Daniel.sakaida@wilco.org

/s/ John C. Prezas
**John C. Prezas**
State Bar No: 24041722
Assistant District Attorney
405 Martin Luther King, Box 1
Georgetown, Texas  78626
(512) 943-1234
(512) 943-1255 (fax)
jprezas@wilco.org

<u>CERTIFICATE OF COMPLIANCE</u>

I certify that, after allowable exclusions, the State's brief contains 7,742 words in compliance with Rule 9.4 of the Texas rules of Appellate Procedure.


_/s/ Daniel Sakaida_____
Daniel Sakaida


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2015, I electronically filed the foregoing document with the clerk of the court for the Texas Court of Criminal Appeals, using the efile.txcourts.gov system.  Via that system, a "Notice of Electronic Filing" was sent to Appellee's appellate attorney of record, Linda Icenhauer-Ramirez, 1103 Nueces, Austin, Texas, 78701, at ljir@aol.com.


_/s/ Daniel Sakaida_____
DANIEL SAKAIDA